[No. 7600. Decided December 11, 1908.]

MINNIE E. KELLY, *Respondent,* v. HUGO N. KUHNHAUSEN
*et al., Appellants.*[1]

TAXATION—TAX TITLE — PROCESS—NAME OF DEFENDANT—IDEM
SONANS. The misnaming in a tax foreclosure summons of Minnie E.
Tiller, the owner, as Minnie E. Tilter is not ground for setting aside
the tax title, as the same comes within the rule of *idem sonans.*

Appeal from a judgment of the superior court for King
county, Albertson, J., entered January 18, 1908, in favor of
the plaintiff, upon stipulated facts, in an action to set aside
a tax title. Reversed.

*C. J. Stephanus,* for appellants.
*Walter S. Fulton,* for respondent.

DUNBAR, J.—The facts in this case are stipulated. The re-
spondent, Minnie E. Kelly, plaintiff below, was formerly
Minnie E. Tiller, and took title to the real estate in question in
that name, December 8, 1897. The taxes for 1900, 1901, and
1903 were allowed to become delinquent. On July 28, 1904, a
certificate of delinquency for the delinquent taxes of 1900 was
issued to Hugo N. Kuhnhausen. On October 18, 1904, the
holder of the certificate of delinquency began an action to fore-
close the same, but named as the parties defendant thereto
"Minnie E. Tilter and John Doe Tilter, her husband, whose
true first name is to plaintiff unknown, and all persons un-
known, if any, having or claiming an interest or estate in and
to the hereafter described real property." The only service
had was by publication, addressed to the defendants as stated
above, Minnie E. Tiller being a nonresident of the state during
all the time mentioned herein. No appearance was made by
any of the defendants, and judgment and sale followed, the
defendant Fred Nuglisch claiming through the purchaser at

[1]Reported in 98 Pac. 603.

the tax sale. This action was brought to set aside the tax proceedings because the notice or summons thereunder was addressed to Minnie E. Tilter instead of Minnie E. Tiller. On the trial of the cause, judgment was rendered in favor of the plaintiff, the respondent here, and appeal followed.

The appellants contend that the names Minnie E. Tilter and Minnie E. Tiller are *idem sonans*, and that the court erred in holding that they were not. This is really the only question to be determined in the case.

"*Idem sonans* is said to exist if the attentive ear finds difficulty in distinguishing them when pronounced, or if common and long-continued usage has by corruption or abbreviation made them identical in pronunciation." *State v. Griffie*, 118 Mo. 188, 23 S. W. 878.

The same definition might be brought into requisition where the duty devolves upon the eye instead of the ear to distinguish the names.

"The rule of *idem sonans* is that absolute accuracy in spelling names is not required in legal documents or proceedings, either civil or criminal; that if the name as spelled in the document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accepted methods, a sound practically identical with the sound of the correct name as commonly pronounced, the name as thus given is a sufficient designation of the individual referred to, and no advantage can be taken of a clerical error." *Hubner v. Reickhoff*, 103 Iowa 368, 72 N. W. 540, 64 Am. St. 191.

It is said in *State v. White*, 34 S. C. 59, quoting from *Schooler v. Asherst*, 1 Littell 216, 13 Am. Dec. 232:

"The doctrine of *idem sonans* has been much enlarged by modern decisions to conform to the growing rule that a variance, to be material, must be such a one as has misled the opposite party to his prejudice."

and quoting from *Ward v. State*, 28 Ala. 60:

"The books abound in hair-breadth distinctions; but we apprehend the true rule to be, that if the names may be sounded

alike, without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial;" the court holding that "Canada McCutcheon" and "Kernedy McCutcheon" are *idem sonans*. The decisions on this question are numerous and irreconcilable, some courts holding that certain names fall within the rule while other courts refuse to apply the rule to similar names which are equally indistinguishable. The cases are compiled in 21 Am. & Eng. Ency. Law (2d ed.), pp. 313 to 317, inclusive, and for the reason above stated it would be profitless to cite and analyze the hundreds of cases there presented. But we think, under the overwhelming weight of authority, that the names under discussion are *idem sonans*.

One of the strongest cases presented by the respondent in opposition to this contention is *Chamberlain v. Blodgett*, 96 Mo. 482, where in a tax foreclosure case it was held that, where the proceedings were against M. B. Miller and the true name of the owner, a nonresident, was M. B. Millen, the court acquired no jurisdiction. It will be noticed, however, that both Miller and Millen are common names, which would not attract any particular attention to the listener or the hearer. It will be further observed that only the initials in each case are set forth. Whether the court would have so ruled had there been a full Christian name used, as in this case, is problematical. The question is not, are the names Tiller and Tilter detached and unassociated with anything else *idem sonans*. It might be possible that so considered they would not be, although it must be confessed that the similarity in sound is so great that, were the names pronounced by an ignorant person, or one who was careless in articulation or whose voice was inclined to be husky, the difference in sound would scarcely be perceptible. For the names must be construed with reference to their associations; that is, in this case with reference to their respective initials or given names, and considering them altogether the question is, would the variance mislead. The only variance in this case is the substitution of

the letter "t" for the second letter "l". In the first place, it is not a common name. In the second place, the initial "E" is the same; and in the third place, the given name "Minnie" is the same. So that it seems to us that the pictures presented to the eye of the ordinary reader are so nearly identical that the danger of being misled is too remote and improbable to justify the annulment of an otherwise valid judgment. And if the party has not been misled, of course the mistake, however flagrant in itself, will be harmless.

The judgment will be reversed, with instructions to dismiss the action.

FULLERTON, RUDKIN, and MOUNT, JJ., concur.

CHADWICK, J., took no part.