EDWARD BUNGE V. STATE OF NEBRASKA.

FILED SEPTEMBER 26, 1910.   No. 16,565.

1. Names: IDEM SONANS. "Adolph" and "Adolf" are *idem sonans*, when used in both forms as the Christian name of the complain-ing witness in an information for robbery and in the transcript of the proceedings of the examining magistrate.

2. Robbery: TRANSCRIPT: CORRECTION OF NAME. In a trial for rob-bery, an order permitting the examining magistrate to correct the transcript of his proceedings by changing the spelling of the name of the complaining witness from "Adolph Hennig" to "Adolf Hennig" is not prejudicial to a defendant who has been familiar with the complainant's identity from the beginning of the prosecution.

3. ——: LARCENY FROM THE PERSON. Under an information charg-ing robbery, accused may be convicted of larceny from the per-son.

4. ——: ——: INSTRUCTIONS. Where the trial court permits the jury to find defendant guilty of larceny from the person after instructing them that the charge of robbery is not sustained by the evidence, instructions on the law of robbery should not be given.

5. ——: INSTRUCTIONS. Under a charge of robbery, there is no error in the trial court's failure to submit to the jury issues as to simple assault and petit larceny, where the evidence fails to show that either of those offenses was committed.

6. Larceny from the Person: WITNESSES: CREDIBILITY: WEIGHT OF EVIDENCE. Where the proofs on behalf of the state are suffi-cient to support a verdict finding defendant guilty of larceny from the person, the credibility of the witnesses and the weight of their evidence are questions for the jury.

ERROR to the district court for Dixon county: ANSON A. WELCH, JUDGE. *Affirmed: Sentence reduced.*

*C. A. Kingsbury* and *Kingsbury & Hendrickson*, for
plaintiff in error.

*William T. Thompson, Attorney General,* and *George
W. Ayres, contra.*

ROSE, J.

Under a charge of robbery alleged to have been com-
mitted in Dixon county, July 6, 1909, Edward Bunge, de-
fendant, was found guilty of stealing from the person of
Adolf Hennig, without putting him in fear, property of
the value of $8.10. The stolen property consisted of a
pocketbook and $8 in money. The sentence imposed by
the district court was a term of three years in the peni-
tentiary. By petition in error defendant now presents for
review the record of his conviction.

The substance of the first assignment, if correctly un-
derstood, is that the trial court erred in permitting the
examining magistrate to correct the transcript of his pro-
ceedings by changing the spelling of the name of the com-
plaining witness from "Adolph Hennig" to "Adolf
Hennig." The identity of the complaining witness was
established by the proofs beyond any question. He
accused defendant of the robbery in the presence of wit-
nesses before they separated the morning the offense was
committed. The preliminary examination shows that de-
fendant knew who accused him of the robbery. The given
or Christian names, Adolph and Adolf are *idem sonans,*
and the change in the transcript was clearly immaterial.
In any event the record shows conclusively that defendant
was in nowise prejudiced by the correction.

It is next argued that the trial court erred to the preju-
dice of defendant in instructing the jury as follows: "The
evidence in this case is insufficient to sustain a verdict
finding the defendant guilty of forcibly and. by violence
or by putting in fear the said Adolf Hennig, and taking
any money or personal property from the said Adolf

Hennig, with the intention to rob or steal the same. But the court instructs you that, under the information in this case, you can find the defendant guilty of stealing the property described in said information from the person of said Adolf Hennig, without putting him in fear by threats or the use of force and violence, if you find from the evidence, beyond a reasonable doubt, that at the time and place stated in the information the defendant did take from the person of the said Adolf Hennig the property so described in the information, without putting the said Adolf Hennig in fear by threats or use of force and violence, with the intent to steal, take and carry the same away, and without the consent of said Adolf Hennig."

In criticising this instruction defendant asserts it practically directs the jury to find him guilty of larceny, and he argues it was the duty of the trial court to instruct them on the law of robbery, there having been no direction on that subject. The rulings of the trial court are not open to defendant's criticism. The charge of robbery included the lesser offense of larceny from the person. Under an information charging robbery, accused may be convicted of stealing property from the person. *Brown v. State,* 33 Neb. 354, 34 Neb. 448. The instruction did not permit the jury to find defendant guilty of larceny from the person, unless they found from the evidence beyond a reasonable doubt that he committed that offense. In directing the jury that the evidence was insufficient to sustain a conviction for robbery, the trial court ruled in favor of defendant, and the effect was to acquit him of the graver offense charged. Afterward it would have been improper to instruct the jury on the law of robbery. Defendant also suggests that petit larceny and simple assault were included in the charge of robbery, and complains because the trial court did not on its own motion submit those issues to the jury. Such a course was not warranted by the evidence.

Another instruction assailed as erroneous reads as follows: "If you find from the evidence, beyond a reasonable

doubt, that at the time and place stated in the information the defendant, either by himself or assisted by the said Ed Maughan, did take from the person of said Adolf Hennig, without putting him in fear by threats or use of force and violence, the property described in said information, or any part thereof, with intent to steal, take and carry the same away, and without the consent of said Adolf Hennig, and that the property so taken was of value, then you will find the defendant guilty of larceny from the person of said Adolf Hennig, without putting him in fear by threats or the use of force and violence."

When the offense was committed, Ed Maughan was present. He was also charged with the robbery, but defendant was separately tried. The complaining witness testified to having been assaulted by Maughan. Five other persons were present at the time, and in view of these facts it seems to be the contention of defendant that the instruction in some way authorized the jury to hold him accountable for the doings of others. "If a crime was committed," says the brief, the giving of the instruction "narrows the evidence down to the defendant alone and takes from the jury any other consideration of the evidence." The question for the determination of the jury was the guilt or innocence of defendant. They were not permitted to convict him unless the evidence of his own acts satisfied them beyond a reasonable doubt that he was guilty. If the crime was committed by some one else, and not by defendant, the instructions as a whole required a verdict of not guilty. The instruction is not challenged on any meritorious ground.

A reversal is also sought on account of the insufficiency of the evidence to sustain the verdict, but a careful examination of all the proofs has failed to disclose a reason for interfering with the conviction on this ground. Hennig, the complaining witness, was a German 27 years old. For four months prior to the commission of the offense charged he lived at Concord, Dixon county, and during that time was there engaged with a partner in the livery business.

Before that, after coming from Germany, he had been a farmer in Thurston, county 11 years. Some of the facts to which he testified positively are, in substance: In a spring wagon containing three seats he conveyed defendant, his companions and some gaming paraphernalia from Concord to German Hall, where a celebration or dance was in progress in the afternoon, subsequent to their arrival, and which was continued during the night following. He was unable to collect his livery bill until evening, and then only succeeded in doing so with the aid of a marshal. He finally received eight silver dollars, which he put into his pocketbook. Defendant kept him under surveillance during the night. Next morning, before daylight, the gambling devices were loaded into his wagon and he drove to Emerson in a rain with defendant, Ed Maughan and four other passengers. He occupied the right end of the front seat and shared the other end with one of the passengers. Defendant sat directly behind him in the middle seat with Ed Maughan and Pete Mortenson. The other passengers sat in the rear seat. Before reaching Emerson, Maughan climbed into the front seat beside Hennig and demanded $2 in change, saying he had previously given him a 5-dollar bill for the livery hire which amounted to $3 for the trip. Hennig denied the receipt of the 5-dollar bill, but through fear of violence offered Maughan his pocketbook containing $8. The offer was refused, and Hennig put the pocketbook in his overcoat pocket on his right side. Pretty soon he "felt some one in his pocket," to use his own expression, and immediately missed his pocketbook. Turning around he saw it between defendant's legs, and said: "You stole my pocketbook." Hurrying to a livery barn at Emerson, he told the manager in charge of it that defendant had robbed him, and promptly called for a marshal. In the meantime defendant went alone to the rear of the barn. Later the empty pocketbook was found near the place thus visited by defendant, and it was positively identified at the trial as the one stolen when it contained $8. The proof

**39**

of these facts, when considered with other circumstances which need not be related, is sufficient to sustain the verdict of guilty. Though the larceny was denied and much of the state's testimony contradicted by defendant, the credibility of the witnesses and the weight of the evidence were questions for the jury. All of the assignments have been examined without finding an error prejudicial to defendant.

BY THE COURT.

A careful consideration of the entire record leads to the conclusion that the sentence of three years is excessive and that a sentence of one year will meet the demands of justice. The sentence is therefore shortened to one year, and as thus reduced the judgment is

AFFIRMED.