STATE OF NEBRASKA, APPELLEE, v. LLOYD A. CARDIN, APPELLANT.
231 N. W. 2d 328

Filed July 3, 1975. No. 39845.

Michael N. Schirber, for appellant.

Paul L. Douglas, Attorney General, and Gary B. Schneider, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Defendant, Lloyd A. Cardin, and two codefendants, his father, Lloyd R. Cardin, and one John A. Bojanski, were all charged in the county court of Cass County, Nebraska, with committing the misdemeanor offense of assault and battery in violation of section 28-411, R. S. Supp., 1974. The judge of that court found the codefendants not guilty, but found defendant, Lloyd A. Cardin, guilty as charged, and sentenced him to a 20-day jail term in the Cass County jail. Defendant thereafter appealed to the District Court for Cass County, Nebraska, which affirmed his county court conviction, but modified the sentence of the county court to a term of 20 days in the Cass County jail, to be served on weekends from 7 a.m., Saturday morning, until 7 a.m., Monday morning, and further provided that the commitment should be served on days when there were no school functions. Defendant appeals to this court from that judgment and sentence.

The defendant assigns as error the failure of the District Court to reverse the conviction in the county court as a matter of law, claiming that the State failed to produce any evidence identifying the defendant as the person who committed the crime charged; and also that the sentence imposed was excessive, and was imposed without a presentence investigation. We affirm.

Defendant is correct in his assertion that to sustain a conviction, the evidence must show beyond a reasonable doubt not only that the crime was committed, but also that the defendant committed it. State v. Sedlacek, 178 Neb. 322, 133 N. W. 2d 380 (1965). Defendant claims that there is a lack of evidence in the record tying this defendant to the crime in question, and that there were no witnesses who testified that they saw the defendant hit the victim, Larry Donovan. However, before exam-

ining this contention, we wish to dispose of another matter raised by defendant.

Defendant points out and makes much of the fact that the complaint filed against the three defendants in this case spells his first name, and that of his father, as "Lloyd," whereas throughout the entire bill of exceptions containing the testimony given in the trial of the case in county court, their names are spelled "Loyd." We think this objection is without merit, and frivolous. While we are confident that the difference in the spelling of the first names was undoubtedly merely an error in the transcription of the testimony, we are certain that the variance in spelling was not in any way prejudicial to the defendant. The error, if any, would clearly be covered under the doctrine of idem sonans. Under that doctrine, a mistake in the spelling of a name is immaterial if both modes of spelling have the same sound and appearance. Strasser v. Ress, 165 Neb. 858, 87 N. W. 2d 619 (1958). We have also held that doctrine is applicable to both civil and criminal proceedings. State v. Paulson, 176 Neb. 126, 125 N. W. 2d 194 (1963). In Strasser v. Ress, *supra,* this court held that where the name "Harald G. Strassen" appeared in an abstract of record of a justice of the peace court showing a conviction for speeding, the true name being "Harold G. Strasser," true name of the licensee and the name appearing in the abstract were so similar in pronunciation and appearance that they must be regarded as idem sonans. Also in Bunge v. State, 87 Neb. 557, 127 N. W. 899 (1910), the court held that "Adolph" and "Adolf" are idem sonans when used in both forms as the Christian name of the complaining witness in an information for robbery, and in the transcript of the proceedings of the examining magistrate. See, also, Carrall v. State, 53 Neb. 431, 73 N. W. 939 (1898), where this court held that the names "Mrs. Fred Steinburg" and "Mrs. Fred Steenburg," the first endorsed on an information as the

name of a witness, and the second appearing in testimony as her name, are idem sonans.

The record is replete with evidence identifying the defendant as the one who inflicted the brutal beating upon the victim in this case. This is obvious from the testimony of witnesses for both the State and the defendant. The first witness for the State was the victim, Larry Donovan. He was asked: "Q. Do you recall who the first individual was that struck you? A. Ya, Loyd Cardin Jr." He also testified that prior to the altercation "little Loyd was standing next to me," and he explained that by "little Loyd" he meant Loyd Cardin, Jr. He testified that Loyd Cardin, Jr., hit him in the mouth and knocked him down three times. He was asked: "Q. Okay, Did you have any talk or discussion with any of the defendants before the first time you got hit? A. Yes sir I did. Q. Who were you talking to? A. Loyd Cardin Jr. Q. Okay, Is that the only one of the defendants you talked to? A. Yes, sir." Subsequent in the testimony, the following appears: "Q. You turned your head and then the next thing you know you are on the ground. A. Ya. Q. Did — This is the first time you got hit. Did you see who hit you? A. Ya. Loyd Jr. Q. Well, now Larry, you turned your head and got hit; I am not trying to trick you or anything. You were looking towards John, did you actually see somebody hit you there? A. Ya. I seen Loyd. I had my head turned like this and Loyd was standing over there. I could see him."

Of particular interest, with regard to the identification of all the defendants in this case, is the testimony given by one of the participants, David Mark Thompson. His testimony in this regard was as follows: "Q. Excuse me. Now you say the (sic) jumped out. Could you explain that? A. Well they got out of the car. Q. How many got out, do you know? A. Three (3). Q. And do you know what three (3) those were? A. Ya. Three .... Q. The three (3) defendants setting here

today? A. (Could not hear answer) Q. Okay, After. they got out of the car then what? A. John wanted to beat me up or something. Q. You stated John and, meaning John Bojanski? A. Ya. Q. And Vickie were arguing about what? A. Arguing about he wanted to beat me up or something, I don't know, they all three (3) started coming at us. Q. They all three (3)? ? ? ? A. Ya. Q. *Who are they all three* (3)? A. *The defendants*." (Emphasis supplied.)

The third witness for the State was Vickie Lynn Wentz. She was asked the following questions and gave the following answers: "Q. Okay, As Mr. Bojanski; as you stated; he took off after Dave, do you know where Cardin Sr. and Cardin Jr. were standing at that time? The general location. A. Well, then I walked back over there by Larry and Loyd Jr. was standing, oh, I'm not sure I think he was standing on the left hand side of me. Then he looked at Larry and Larry said that he didn't want to fight but Loyd hit him and knocked him on the ground. Q. How did he hit him; I mean what did he hit him with? A. His fist. Q. Do you know where he hit him? A. In the mouth, right here." It was at approximately this point that counsel made the following statement into the record, apparently without objection: "At this time I would (sic) to make a statement for the record. We have been calling the Cardins, Loyd Cardin Sr. and Loyd Cardin Jr. Now in reference to this I do not know if they are; that is their title but when I refer to Loyd Card (sic) Sr. I am referring to the father and Loyd Cardin Jr. is to the son. You understand that Vickie? A. Yes." Subsequent in her examination, she was asked the following questions: "Q. Okay, After John got away from you, what did you do? A. Well I just turned around and I looked at Larry and that's when Loyd Jr. just hit Larry. Q. Okay. So you saw Loyd Jr. hit Larry? A. Yes sir. Q. He hit him with his fist, right? A. Yes. Q. Okay. After he hit him did

he knock Mr. Donovan down on the ground? A. Yes. Sir. Q. Did you . . . . you said you saw him hit him more than this one time? A. He was on top of Larry and Larry was screaming."

Without detailing all the evidence that was adduced from the State's witnesses, it is to be noted that after the State had rested the defendant made no motion for a directed verdict on the ground of insufficiency of the evidence, or any motions whatsoever. The first witness for the defendant was John Bojanski, one of the defendants, and he testified among other things to the following, without objection from counsel: "Q. So as far as you are concerned you don't know how Larry came by his condition you saw him in after you came back from pursuing David. A. I was told afterwards how; but I didn't see it. Q. Told afterwards—by who? A. By Mr. Cardin. Q. And what was that? A. He said that his son hit him a couple times."

However, the most significiant testimony of all came from the defendant, Lloyd R. Cardin, father of the defendant, Lloyd A. Cardin, his 16-year-old son. He describes the altercation, at which he was personally present, as follows: "Q. Well, A, Mr. Cardin could you describe in your own words what happened at this—in relation—let's narrow this down a little bit. In relation to Larry Donovan and your son Loyd Cardin Jr. A. Yes sir. My son and Larry got into it. My son hit him and knocked him down. Q. Okay. You said your son hit him and knocked him down. You saw this with your own eyes? A. Yes. Q. Okay, Was there any argument or any words spoken between them before? ? ? ? ? A. They was talking, what they was saying I don't know. Q. How close were you to your son and Larry? A. Oh, 10 feet. Q. Ten feet, so you didn't hear what was going on between them? A. They was talking— No sir, I don't know. Q. Okay, Then you say your son —tell us what happened. A. Well he hit Larry and knocked him down. Q. Okay, He hit him and knocked

him down. Did Larry get up? A. No sir. Q. Larry did not get up? A. No sir. Q. Well if Larry didn't get up, was that the end of the fight? A. No sir. Loyd went down on him and I told him to get off him. Q. All right, after Larry fell down, your son jumped on top of him and they were wrestling or something like that? A. They was fighting, yes."

The last witness for the defendants was John Minor, who, among other things, testified as follows: "Q. Okay, so you don't really know what happened first? A. No I don't. Q. Okay, but very close in time, within a few seconds the girls ran and Loyd Jr. hit Larry? A. Yes sir. Q. Okay, and after Loyd hit Larry could you, directing your attention to Loyd and Larry, . . . . what then did you see between Loyd and Larry? A. Well I seen Loyd hit Larry and Larry went down and I could not see them no more."

In view of all the foregoing testimony taken from the record in this case, it borders on the ridiculous to claim there is no evidence from which the court, as the trier of fact, could conclude that this particular defendant was guilty of an assault upon Larry Donovan. The decision of the District Court upon that point is amply supported by the record and must be affirmed.

Turning now to defendant's claim that both the District Court and the county court abused their discretion in sentencing him to a term of 20 days in the county jail, we find that contention is likewise without merit. The assault in this case, as disclosed by the evidence in this record, was an unusually brutal one, and the victim suffered serious and painful injuries therefrom, including a broken nose and cuts requiring multiple stitches. At the conclusion of the trial, the county judge made the following comments: "As to the defendant, Loyd A. Cardin; of course, all of the evidence including the evidence of the defendants is to the point that he was the one who committed an assault and a battery and it was certainly vicious. It was unprovoked. This boy

could well have been seriously injured. Unfortunately (sic) he wasn't. If there is repetition of these type of events it well may be that the next time somebody will be killed or seriously injured. Certainly I would hope that the defendants themselves would assess it in this light and that there be no repetition of these."

A sentence imposed within statutory limits will not be disturbed on appeal unless an abuse of discretion appears in the record. State v. Gochenour, 193 Neb. 855, 230 N. W. 2d 90 (1975). Under section 28-411, R. S. Supp., 1974, the penalty for one convicted of assault and battery is a fine in any sum not exceeding $500 or by imprisonment in the jail of the county not exceeding 6 months. There is no question that the sentence given defendant was well within the statutory limits. It appears that both courts were most lenient and considerate in the imposition of this particular sentence; and, in fact, endeavored to "tailor-make" the sentence to fit the convenience of the defendant in every way possible, without sacrificing the deterrent effect they desired to attain. While it is true that the court sentenced the defendant without the benefit of a presentence investigation, we point out that the offense in question was not a felony, but a misdemeanor, and that under section 29-2261, R. S. Supp., 1974, the use of a presentence investigation before sentencing an offender is required only as to those convicted of felonies. The failure of the court to obtain a presentence report in this case did not constitute prejudicial error. The reasons given by the court for the sentence, as above stated, appear to be reasonable, and were based upon facts and circumstances within the knowledge of the judge. There was no abuse of discretion in this regard.

Finding no reversible error, we, therefore, affirm the judgment and sentence of the District Court.

AFFIRMED.