## In Re: Property of Moskowitz

*Thomas O. Malcolm,* for petitioners.
*Maurice M. Green,* for Area Homes, Inc.

GAWTHROP, III, *J.,* September 22, 1981—This case comes before us upon the filing of a petition to set aside a tax sale, petitioners, M. Barry and Sandra J. Moskowitz, objecting to the sale of their property by the Chester County Tax Claim Bureau on the grounds that the bureau failed to comply with the notice provisions of the Real Estate Tax Sale Law (Tax Law).[1] After hearing, argument, and review of the briefs of counsel, we entered an order denying the above petition and dismissing the objections and exceptions to the sale. This opinion is written pursuant to Pa.R.A.P. 1925(a), petitioners having appealed from that order.

---

1. Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §5860.101 et seq.

## FACTS

Petitioners, M. Barry and Sandra J. Moskowitz, were the registered owners, as tenants by the entireties, of the property located at 715 Trephanny Lane, Tredyffrin Township, Chester County. On September 11, 1978, this property was sold to Area Homes, Inc., at a tax sale conducted by the Chester County Tax Claim Bureau to recover delinquent 1976 county and school taxes.

Notice of the impending sale was published in the Daily Local News and Coatesville Record, newspapers of general circulation in the county, on August 19, and 26, 1978, and on September 2, 1978, as well as in the Chester County Law Reporter on August 31, 1978. The property was correctly identified as being owned by "Moskowitz, M. Barry and Sandra J." in the August 26 and September 2 Record. In the other publications, however, an "a" was printed instead of a "z" at the end of petitioners' surname, so that the property was identified as being owned by "Moskowita, M. Barry and Sandra J." In all of the publications the property was fully and accurately identified both by address and code number immediately following its owners' full names.

The property was posted with notice of the sale on August 2, 1978, by Chester County Deputy Sheriff Alexander J. Feralio. Petitioners admit in their pleadings that the property was posted in accordance with the act.[2] [Petition, ¶4(b)(4)].

---

2. Indeed, there is no doubt the property of petitioners was posted, or petitioners were known to Deputy Sheriff Feralio:

By Mr. Malcolm:

Q. Mr. Feralio, had you ever seen Mrs. Moskowitz prior to that time [posting notice of the tax sale]?

A. Yes, sir, I had been there on official business before and she had received other papers from me.

Notice of the sale was sent also by certified mail to the Moskowitz residence and signed for by Sandra J. Moskowitz on June 30, 1978. Although there is no dispute that the notice was received (Petition, ¶4(6)(4); N.T. 14, 38-40), the exact wording of the address is in dispute. Petitioners contend that the address read "Dr. and Mrs. M.B. Moskowitz," while the respondent-purchaser argues that the address read "M. Barry and Sandra J. Moskowitz.[3] The upset price of the property as listed in all three forms of notice, published, posted, and mailed, was $1,301.75. This figure constitutes the sum of the

---

Q. What other official business had you been there before?

A. On papers — legal matters.

Q. What sort of papers are we talking about?

A. Claims for money.

Q. How many occasions, would you say, had you been there?

A. Two occasions before this particular one.

Q. You seem to be suggesting you had been there on occasions subsequent, is that correct?

A. Yes, I also met Mr. Moskowitz on one of them.

Q. Mr. Moskowitz?

A. Yes.

Q. What occasion was it you met Mr. Moskowitz?

A. On another legal matter.

● ● ●

A. I might add, if I may, I also served him at his office in Paoli in a dental office one day.

3. Petitioners presented the return receipt card inscribed with the address "Dr. and Mrs. M.B. Moskowitz" in support of their contention while respondents offered the testimony of Mrs. Harriet W. Sheller, Tax Lien Specialist, Chester County Tax Claim Bureau, who stated that such notices are customarily addressed to the property owners as their names are registered. We note that petitioners did not produce the certified mail envelope itself, which would be dispositive of this issue. However, since the issue is unnecessary to our determination, we need not reach it.

1976 county and school taxes due on the property, plus interest and costs. The property was sold to Area Homes, Inc., for $3,024.22. The sale price included, in addition to the delinquent 1977 taxes, the current 1978 county and school taxes also owed by the Moskowitz, plus interest, costs, and a municipal charge.

## DISCUSSION

Petitioners object to the tax sale on the grounds that the Chester County Tax Claim Bureau failed to comply with the notice provisions of the Real Estate Tax Law, 72 P.S. §5860.602. Although they do not deny having actual notice of the sale, and indeed, admit receiving such notice by certified mail and by posting they contend that the contents, the wording of the notice, were fatally defective. We disagree.

Petitioners first assert that the published notice is defective in that their surname, Moskowitz, was misspelled 'Moskowita' in five out of the seven publications. Respondent-buyer argues that the typographical error is not fatal.

In support of that position it cites the doctrine of idem sonans.[4] This somewhat arcane principle pro-

---

4. Latin, literally, "sounds the same." In early formulation, the test for application of the doctrine was ". . . whether although spelled differently, the attentive ear finds difficulty in distinguishing the two names when pronounced"; if so, the differences were to be ignored. Strasser v. Ress, 165 Neb. 858, 87 N.W. 2d 619, 622 (1958). By the turn of the century, courts acknowledged the doctrine had been enlarged to conform to the growing rule that a variance, to be material, must be such that the opposite party has been misled to his prejudice. State v. White, 34 S.C. 59, 12 S.E. 661 (1891). (Kennedy McCutchen and Canada McCutchen held idem sonans); Kelly v. Kuhnhausen, 51 Wash. 193, 98 P. 603 (1908); (Minner E. Tiller and Minnie E. Tilter held idem sonans); Goodman v.

vides generally that absolute accuracy of spelling is not required in legal documents if three criteria are met: (1) the name, as misspelled, sounds essentially the same as the name correctly spelled; (2) the name misspelled adequately identifies the person whose name is in question; and (3) the party is not prejudiced by the misspelling. Commonwealth v. Hessman, 8 D.&C. 2d 625 (1956). As this definition evidences, the doctrine of idem sonans is broader than its literal definition, encompassing considerations of notice and prejudice. See: Township of Lower Merion v. Buckley, 28 Mont. L. Rep. 58 (1912). While our independent research has revealed no appellate Pennsylvania decisions directly on point,[5] authorities supporting this interpretation are common in other jurisdictions. In discussing the doctrine of idem sonans, the Oklahoma Supreme Court, in King v. Slepka, 194 Okl. 11, 146 P. 2d 1002, 1005 (1944), stated:

"that where written or printed notice is involved there must be some substantial similarity to the true name, in the sound as pronounced and as observed by the eye; and that the possibility or probability of mere clerical or typographical errors must be duly taken into account and that we must consider whether the variation is such that the person to be notified thereby, or his acquaintances, upon reading the published notice would be misled by the vari-

---

Riddick, 152 Va. 693 (1929) (Harold G. Strasser and Harald G. Strassen held idem sonans). The court in Kelly v. Kuhnhausen, supra, 98 P. at 604, stated: "The same definition [of idem sonans] might be brought into requisition where the duty devolves upon the eye, instead of the ear, to distinguish the names."

5. Indeed, our Lexis search of the term "idem sonans" has disclosed no mention of the term, in Pennsylvania.

ation, giving due consideration to the contents of the whole notice."[6]

In King, the next friend of the owner of property sold at a tax sale sought to set aside the sale on the grounds that the published notice incorrectly listed the owner of the property. The owner registered on the tax rolls was "Crittenden Smith," while the name in the published notice read "Crittenden & Smith." The property was correctly identified in the notice. The court held that absent evidence of prejudice, the name published was idem sonans with the name registered and hence, the notice was valid.

The case of Bertha v. Smith, 26 Tenn. App. 619, 175 S.W. 2d 41 (1943), also involved an action to recover land sold at a tax sale. There, a judgment pro confesso was entered against the record owner of the property, E.M. Bertha, for failure to pay taxes. The judgment, however, was styled "E.M. Berthre." The court held the names to be idem sonans on the grounds that the misspelled name sufficiently identified the party, who was not prejudiced, as the other papers in the case were styled correctly.

Here, the similarity in appearance of petitioners' name, correctly and incorrectly spelled, the content of the notice as a whole, and the absence of any resulting prejudice clearly outweigh any difference in pronunciation between the spellings. The signifi-

6. Accord: Martin v. State, Tex. Crim. App., 541 S.W. 2d 605 (1976); State v. Cardin, 194 Neb. 231, 231 N.W. 2d 328 (1975); Powers v. Kelly, 83 Ill. App. 2d 289, 227 N.E. 2d 376 (1967); Raven v. State, 49 Tex. Crim. App. 294, 193 S.W. 2d 527 (1946); Bertha v. Smith, 26 Tenn. App. 619, 175 S.W. 2d 41 (1943); Collingsworth v. Hutchison, 185 Okla. 101, 90 P. 2d 416 (1939); People v. Callahan, 324 Ill. 101, 154 N.E. 463 (1927); Kelly v. Kuhnhausen, supra.

cance of the error is diminished when viewed in the context of the relatively distinctive character of the name Moskowitz. Further, the remainder of the notice compensates for the error. Petitioners' given names and initials are listed[7] as registered, immediately following their surname and the property is accurately described, both by address and code number, immediately following the petitioners' complete names.[8] The misspelled name adequately identifies petitioners as the owners of the subject property. Any ambiguity or confusion from this one-letter difference had to have been dispelled by the entire notice. Most importantly, the Moskowitzs were not prejudiced by the error; they, in fact, admit having actual notice of the sale through receipt of the mailed and posted notices.[9] We note also that the Moskowitzs are no strangers to these proceedings, having previously rescued their property from the throes of a tax sale one day prior to its scheduled date in 1976.

---

7. Several of these same factors were relied on by the court in Kelly v. Kuhnhausen, supra, 98 P. at 604: "In the first place it (Tiller/Tilter) is not a common name; in the second place, the initial 'E' is the same; and, in the third place, the given name 'Minnie' is the same."

8. The incorrect listing, in its entirety, reads: Tredyffrin Township, Moskowita, M. Barry & Sandra J., 43-6P3-1, dwg & Lot, NS of Trephanny La., $1,301.70; Coatesville Record, August 19, 1978, at 13.

9. The Supreme Court, in Hess v. Westerwick, 366 Pa. 40, 76 A.2d 745 (1950), addressed the issue of notice served pursuant to §5971 of the Treasury Sales Act, Act of May 31, 1933, P.L. 1134, as amended, §5951 et seq., the statute governing tax sales when the Real Estate Tax Sale Law is not applicable. §5971 of the Treasury Sales Act requires that notice of the sale be published, mailed, and, if notice cannot be mailed to the owner or terre tenant, posted. In speaking of these requirements, the court in Hess stated that service upon the owner is

In short, petitioners ask us here to overturn a tax sale on the basis of a one-letter typographical error in listings otherwise accurate, when the unrebutted evidence is clear that they well knew of both the scheduled sale and its intended subject. This we will not do. To set aside that sale on these grounds would indeed exalt form over substance. Accordingly, we determine that "Moskowita" is idem sonans with "Moskowitz" and hold that the published notice is valid. In so holding we are mindful of the oft-repeated purpose of the tax law:

"The strict provisions of the Real Estate Tax Sale Law were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes. Tax acts were rather meant to protect the local government against wilful, persistent, long standing delinquents for whom we hold no brief, and to whom the appellate court decisions have consistently given short shrift." Ross Appeal, 366 Pa. 100, 107, 76 A.2d 749, 753 (1950).

And, as Judge MacPhail pertinently noted: "On the other hand, it is obvious that the legislature has progressively attempted to make the purchase of a tax title something more than the purchase of a law suit." Raynes v. Boltz, 93 Dauph. 150, 153 (1970). Those who purchase realty at a tax sale have a right to expect that the title conveyed is not so fragile as to be frangible at the untimely prayer of the tax delinquent who conjures the flimsiest pretext. There

---

provided primarily by mailing and posting and "[t]hat the purpose of publication is to notify the public in general so that the sale may be well-attended by bidders, etc. . . ." Hess at 95. We find those observations equally applicable to §5860.602 of the Real Estate Tax Sale Law.

is an obvious need to secure clear title to properties sold pursuant to the Real Estate Tax Sale Law. Such expectations and needs should not be defeated by those who have steadfastly refused to pay local governments their due. Otherwise, this legitimate system of enforcement will lose all force.

Petitioners next contend that the publication notice was defective in that the upset price contained therein incorrectly included interest and costs and did not approximate the actual upset price. This argument we also find lacking.

§5860.602 of the Tax Law requires that the published notice set forth ". . . (d) the terms of the sale including the approximate upset price . . ." The composition of the upset price is governed by §6805.605 of the Tax Law. That section provides in pertinent part:

"The bureau shall fix as the upset price to be realized at the sale of any property upon a claim absolute, the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment due on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property and (f) the record costs and costs of sale, including pro rata costs of the publication of notice and costs of mail and posted notices in connection with the return of the claim and mail and posted notices of sale.

In response to petitioners' first contention, we need but cite clauses (b) and (f) of §6805.605 which explicitly include interest and costs as components

of the upset price. This section, however, also requires that current taxes and municipal charges be included in the upset price. This was not done. However, we find that such omission does not invalidate the notice.[10] Although our independent research has disclosed no authority directly on point, we find guidance in the language of the Commonwealth Court in Everett, Inc. v. Ayers, 22 Pa. Commw. 422, 349 A.2d 514 (1975). There, in affirming the trial court's invalidation of a tax sale, the court stated "that where a property owner has had full and timely knowledge of all steps taken to a tax sale and could not have been misled to his detriment he cannot thereafter complain about omissions in the nature of the notice of sale given to him." Everett, Inc., supra, at 22 Pa. Commw. 427. Here, there was no prejudice. Petitioners, who had actual notice of the sale, do not claim to have been prejudiced by the Tax Bureau's failure to list all taxes due. We also perceive that the upset price is included in the published notice to inform prospective purchasers of the probable price and to assure that the sale is well attended by bidders, not to inform the recalcitrant taxpayer of the sale. See footnote 9, supra. That job is performed by the name and address components of the notice.

Finally, petitioners object to the mailed notice, which they contend is defective because it was sent in a single envelope addressed to both registered owners rather than in separate envelopes addressed to each owner. Our Supreme Court recently addressed this issue in Teslovich v. Johnson, 486 Pa. 622, 406 A.2d 1374 (1979), holding that §5860.602

10. The situation at bar must be distinguished from those situations in which the upset price is inadequate. See: Wilkes-Barre v. Luzerne Tax Claim Bureau, 4 D.&C.2d 399 (1955).

of the Tax Law requires that separate and individual notice be mailed to each named owner of the property, regardless of whether title is held jointly, in common, or by the entireties.

The court, however, specifically directed that its decision be given prospective effect commencing thirty days from the date of filing. This tax sale was held on September 11, 1978, more than one year prior to the December 22, 1979, effective date of Teslovich. We deem ourselves unequivocally bound by the Supreme Court's decision in Teslovich regarding the prospective effect of that decision.

Notwithstanding this express directive from on high, petitioners, in their able and scholarly brief, urge us to construe independently §5860.602 of the Tax Law as did the Supreme Court in Teslovich. They argue that such an interpretation requires us not to embark on a novel constitutional journey, but simply to give effect to clear, statutory language which was in effect at the time these events occurred, and long before the Supreme Court decided Teslovich. So also, petitioners argue that to deny them relief here is to deny them due process and equal protection of law in that the parties in Teslovich were awarded relief notwithstanding the court's directive that that decision be made effective thirty days hence. In the logic of these arguments we find much appeal; however, for us so to apply the statute, in the face of the Supreme Court's express supervisory mandate, would be nothing other than judicial anarchy, I cannot, under my oath, be so venturesome.

Besides the fact that the Supreme Court's word is law, there is obvious sound policy to their having given Teslovich prospective effect only; presumably to avoid clouding titles obtained in tax sales conducted in accordance with the statutory construc-

tion of the line of cases commencing with Auritt v. Wheatcroft, 2 Pa. Commw. 408, 278 A.2d 172 (1971). In Auritt, the court held that a single notice addressed to both husband and wife, holding the property as tenants by the entireties and living together, conforms to both the letter and spirit of §5860.602 of the Tax Law. In Wheatcroft v. Schmid, 8 Pa. Commw. 1, 301 A.2d 377 (1973), the court held that a single notice addressed to both husband and wife living together and holding as tenants by the entireties was valid where only the wife signed the receipts for the notices.

Although the exact wording of the address is here disputed, there is no question that the address referred to both owners.[11] The Moskowitzs were tenants by the entireties and they were living together. Sandra J. Moskowitz admits signing the return receipt card and the petitioners admit receiving the notice. Such notice was valid under Auritt and its progeny and is accordingly valid here.

Under the foregoing reasoning we reached our decision to deny the petition to vacate and to confirm the sale.

---

11. See: footnote 1, supra. We find In re Tax Claim Bureau, supra, factually distinct from the case at bar. There, the owners were neither living together nor were they tenants by the entireties—the two express requirements of the pre-Teslovich line of cases.