STATE OF NEBRASKA, APPELLEE, V. VICTOR JOURNEY, APPELLANT.

271 N. W. 2d 320

Filed November 1, 1978. No. 41961.

Ross, Schroeder & Fritzler, for appellant.

Paul L. Douglas, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

Defendant below, Victor Journey, appeals to this court from the convictions and sentences imposed upon him by the District Court for Buffalo County, on an amended information charging him in four counts with the offense of robbery, under section 28-

414, R. R. S. 1943; shooting with intent to kill, under section 28-410, R. R. S. 1943; use of a firearm to commit a felony, under section 28-1011.21, R. R. S. 1943; and with being a habitual criminal, under section 29-2221, R. R. S. 1943. Having waived a jury trial, he was tried by the court and found guilty of the three crimes with which he was charged. The habitual criminal hearing was later held, at the conclusion of which the court found that under the evidence adduced the defendant was a habitual criminal under the applicable statute. The court sentenced the defendant to a term of 3 to 5 years on count I for robbery; to a term of 15 to 25 years on count II, shooting with intent to kill; and a further term of 3 to 5 years on count III, use of firearm to commit a felony. The court specifically provided that all the foregoing sentences were to be served consecutively.

In his brief on appeal, defendant makes six assignments of error, but only discusses three of them. Therefore, under our Rule 8 a 2 (3), we shall limit our consideration to the three errors assigned and discussed. Those are: (1) The trial court erred in admitting the testimony of state witnesses whose names were not endorsed on the information or amended information; (2) the trial court erred in finding the defendant guilty on counts I, II, and III, when such finding was founded on circumstantial evidence insufficient to prove beyond a reasonable doubt that the defendant committed such crimes; and (3) the trial court erred in admitting the expert testimony of Edward Kerns in regard to a gunpowder residue test when such testimony lacked proper and sufficient foundation and was therefore irrelevant. We affirm the judgments and sentences of the District Court.

The facts of the case are that on July 25, 1977, at approximately 9 p.m., one Jack Muller drove his 1962 Chevrolet pickup to a gravel pit in Buffalo County, Nebraska, and began fishing in a nearby

canal. Later, just as it was getting dark, a car arrived at the pit and parked in the opposite direction behind Muller's pickup. The driver of the car came over to the canal and talked to Muller. At the trial, Muller was able to identify the driver of the car, Vernon Ellmers. After the discussion with Ellmers, Muller began preparing to leave. He noticed a passenger in the car but was unable to see him clearly. He was able to identify the car as a dark-colored Skylark. While Muller was in the process of placing his fishing equipment in the back of his truck he heard a gunshot fired behind him. As he started to turn around, a second shot was fired, which hit him in his side. He then ran around his truck to the side of the pit. As he was running he heard three or four more shots. When he got to the pit he swam across it and hid on the opposite side in some trees and brush. He observed the car and his pickup being driven around the pit several times before leaving the area. Muller then walked onto nearby Interstate 80 and flagged down a motorist who took him to the Kearney, Nebraska, interchange. At the interchange Muller informed law enforcement officers of what had taken place and he was then transported to a hospital.

Earlier in the evening, at approximately 9 p.m., a grounds-keeper and watchman at the Fort Kearney State Park, Steven Bartek, observed a brownish colored car parked in a restricted area in the park. Bartek approached the car and talked to the sole occupant whom he later identified as being Vernon Ellmers. Bartek noticed the Arizona license plates on the car and recorded the car's license number as it left the area. At about 9:20 or 9:30 p.m., Bartek saw the brown car again at the park's entrance. On the second encounter Bartek talked with the driver, Ellmers, again, and at trial identified the defendant as the passenger in the car. Ellmers had asked Bartek about a good place to fish and was told about

the lakes along the interstate. Ellmers' vehicle was then turned around and left the park. When Bartek's supervisor, Roger Sykes, came by at approximately 10 p.m., Bartek gave him the license number of the Ellmers car. Sykes then went to his home, contacted the Buffalo County sheriff's department and reported having seen the Ellmers vehicle, as a report to be on the lookout for such a vehicle had been broadcast earlier in the day. At approximately 10:20 p.m., several officers from the Buffalo and Kearney County sheriff's departments met Mr. Sykes at the park's entrance. Later a State Highway Patrol investigator Harold Kotschwar, and a conservation officer, Bill Ernst, joined the group at the park. The officers split up and began checking the roads around the interstate for the Ellmers vehicle. As the officers were searching for the Ellmers car a radio broadcast reported the shooting of Jack Muller and also a description of his truck. Shortly thereafter Ernst and Sykes met Muller's pickup coming out of the area where Muller had been shot. The Ernst and Sykes vehicle turned around and followed the pickup into Kearney, Nebraska, where a police roadblock had been set up to stop the pickup. The pickup was stopped, at which time Ellmers was driving and the defendant was a passenger therein. Officers found a revolver under the driver's seat with 6 unfired bullets in it, and, at the same time found another revolver 15 to 20 feet behind the pickup on the passenger side of the pickup, on the edge of the road, with 5 empty shells and 1 unfired shell in the gun's chamber.

An investigator for the State Highway Patrol, Officer Esley Kotschwar, examined the revolver retrieved from the road and by comparing test bullets fired from the gun with the bullet recovered from Jack Muller's body, ascertained that the retrieved revolver was the gun which had shot Jack Muller, and so testified.

The same evening when Ellmers and the defendant were arrested, a detective of the Kearney police department, Edward Kerns, conducted a gun particle residue test upon them. Officer Kerns testified that gunpowder residue was very prominent on the defendant Journey's right hand; and Officer Kerns testified that the gun residue test was also conducted on Ellmers, but that in his case, the gunpowder residue "was very minute. It wasn't prominent."

It appears that defendant had been crippled sometime prior thereto in an automobile accident, and his physician, Dr. Staley, testified on direct examination that the defendant's legs were essentially useless. On cross-examination he also testified that the defendant was "probably one-hundred percent completely useless as far as his lower extremities are concerned."

Officer David Tracy of the Kearney police department testified that he had seen the defendant driving a car in May of 1977. However, on cross-examination he admitted that there was a hand control below the steering wheel, but he did not know whether defendant was using it on that occasion.

We first address ourselves to the defendant's assignment of error that the three witnesses who were not listed on the information or amended information should not have been allowed to testify. Section 29-1602, R. R. S. 1943, provides that the prosecuting attorney shall endorse on the information "the names of the witnesses known to him at the time of filing the same; and at such time thereafter, as the court * * * in its * * * discretion, may prescribe, he shall endorse thereon the names of such other witnesses as shall then be known to him." However, this court in State v. Keith, 189 Neb. 536, 203 N. W. 2d 500 (1973), stated that the "purpose is to inform the defendant of the names of persons who will testify against him and give him an opportunity to investi-

gate regarding their background and pertinent knowledge.'' The essential question is whether the defendant was prejudicially harmed in preparing his defense by the prosecution's failure to have the names listed on the information. We do not feel the defendant was harmed, and he has not demonstrated he was prejudiced. We have said that "prejudice will not be presumed but must be shown in this type of a case.'' Waite v. State, 169 Neb. 113, 98 N. W. 2d 688 (1959).

The names of the three witnesses who testified, although not appearing on the information, were included on a list filed by the prosecuting attorney in response to the defendant's motion to inspect and copy. The list also included what each witness would testify to. Although such list of witnesses was not filed until 5 days before the trial, the defendant did not request a continuance of trial to further investigate the proposed witnesses, if such investigation was necessary. See Frey v. State, 109 Neb. 483, 191 N. W. 693 (1922).

The defendant has also objected to the testimony of witness Roger Sykes, on the ground that his name was incorrectly spelled as Roger Sikes on the information, and on the list of witnesses filed by the prosecution. The defendant has not shown that he was mislead or prejudiced by the misspelling of Mr. Sykes' last name on the information.

In the case of State v. Cardin, 194 Neb. 231, 231 N. W. 2d 328 (1975), this court discussed the doctrine of idem sonans as it related to misspelled names. We stated: "Under that doctrine, a mistake in the spelling of a name is immaterial if both modes of spelling have the same sound and appearance.'' See, also, Carrall v. State, 53 Neb. 431, 73 N. W. 939 (1898). We conclude there was no prejudice in allowing Mr. Sykes to testify in this case although his name was misspelled on the information.

We next consider the defendant's assignment of error that the testimony of Officer Edward Kerns [spelled "Kearns" in appellant's brief], who was an expert witness for the State, lacked proper and sufficient foundation, and hence his testimony was not relevant and was inadmissible. Officer Kerns testified that he had performed the gun particle residue test on many prior occasions, and described in detail as to how it was done. His testimony was to the effect that the tests proved conclusively that the defendant had fired a gun, and that his test revealed blow back gunpowder on the right hand and wrist of the defendant, and also to a lesser extent, on his left hand and wrist. He was asked to explain what a gun particle residue examination was and answered: "It's a chemical examination to determine if a person had recently fired a weapon, this by a revolver to get a blow back of gun powder on the hand and wrist." Defendant argues that no evidence was presented to the court to prove that a revolver would "blow back." It is clear that Officer Kern's answer, set out above, is sufficient testimony of the "blow back" propensities of firearms. Defendant also argues that the prosecution failed to establish that the reagent sprayed on the hands of the defendant would react with gunpowder and appear as flakes under an ultra violet light. This contention is completely refuted by the record, which reveals that when asked by the prosecution how the test would detect gunpowder residue, Officer Kerns stated: "Under ultra violet light this will be illuminated as little flakes, metallic flakes." There is little doubt that sufficient proper foundation was presented to allow the testimony of Officer Kerns as to the results of the gunpowder tests performed on the defendant. There would seem to be little doubt that under the new Nebraska Evidence Rules, particularly sections 27-702 to 27-705, R. R. S. 1943, Officer Kerns' evidence would have been clearly admissible, even

without prior disclosure of the underlying facts or data, the weight of such evidence being for the trier of facts.

The last assignment of error raised and discussed by the defendant is that the circumstantial evidence adduced at the trial was insufficient to convict the defendant of the crimes charged against him in counts I, II, and III of the amended information. In State v. Bartlett, 194 Neb. 502, 233 N. W. 2d 904 (1975), in an opinion by Clinton, J., we stated: "We have recently restated the circumstantial evidence rule in what we believe is a more accurate formulation of the principle involved. The reformulation is: The test of the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt." We have followed that rule in the recent cases of State v. Partee, 199 Neb. 305, 258 N. W. 2d 634 (1977), and State v. Swayze, 197 Neb. 149, 247 N. W. 2d 440 (1976). We believe that the evidence in this case is more than sufficient to meet the requirements of the rule regarding circumstantial evidence as is expounded in the above cases. It is clear from the record that witness Bartek saw the defendant riding as a passenger in a brownish car driven by Ellmers shortly before the incident in question. The victim, Muller, testified Ellmers had a passenger with him in a dark car when he was shot. The gun residue test showed that the defendant had recently fired a gun. The defendant was a passenger in Muller's pickup when it was stopped after leaving the area where the incident occurred. The revolver which shot Muller was found about 20 feet behind the pickup at the roadblock on the defendant's passenger side of the pickup. The gun had five spent shells and one live shell in it. Another gun was found under the

driver's seat, occupied by Ellmers in the pickup. That gun had six live shells in it, and no spent shells. We think it is clear that the evidence, although circumstantial in nature in certain respects, was sufficient to support the defendant's conviction, including the element of intent. Defendant has contended that the evidence was insufficient to prove that he shot Muller with the *intent* to kill. In Swartz v. State, 121 Neb. 696, 238 N. W. 312 (1931), we stated: "It (the intent) may be gathered or drawn from all the evidence, facts and circumstances of the case, inclusive of the act, and is a matter of fact for the consideration and decision of the jury. * * * The intent with which an act is done is inferable from the act itself, and from the facts and circumstances surrounding it. * * * But it is sufficient in such cases to prove facts from which the specific intent may be inferred. * * * It has often been held that, while a specific intent is essential, its existence may be inferred from the circumstances, under the usual rule that every sane man is presumed to intend the usual and probable consequences of his acts." See, also, State v. Mills, 199 Neb. 295, 258 N. W. 2d 628 (1977). In this case the District Court, acting as the jury and trier of facts, had sufficient evidence before it by which it could find that the defendant had the necessary intent to kill Muller. Muller testified that while he was loading his pickup to leave the pit he heard a gunshot behind him. As he turned to look, a second shot struck him. He then ran to the edge of the pit and at that time heard three or four more shots being fired. It seems clear that since Muller was hit by the second shot, there was sufficient evidence from which the trier of fact could find that the defendant intended to kill Muller. There is clearly "substantial evidence" in this case to sustain defendant's conviction. See State v. Davis, 198 Neb. 823, 255 N. W. 2d 434 (1977).

One further matter should be mentioned. It ap-

pears from the record that the trial court found the defendant to be a habitual criminal under section 29-2221, R. R. S. 1943. That statute does not constitute a separate offense but provides an enhanced penalty of from 10 to 60 years for each conviction. It appears that the trial court might have erred in the sentences it imposed upon the defendant, but neither party has assigned error in this regard. Although defendant has claimed that the sentences imposed were excessive, he has not discussed this point, and, under Rule 8 a 2 (3), Revised Rules of the Supreme Court, 1977, we likewise shall not discuss it, other than to observe that it appears it may have been possible for the court to impose even more severe sentences upon the defendant than it did.

Finding no error, the judgments and sentences of the District Court must be affirmed.

AFFIRMED.