## STATE OF NEBRASKA, APPELLEE, V. VICTOR JOURNEY, APPELLANT.

301 N.W.2d 82

Filed January 16, 1981.   No. 43255.

Wesley C. Mues for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

BURKHARD, District Judge.

The defendant, Victor Journey, has appealed to this court from a denial of his motion to vacate and set aside judgment of conviction and sentence filed pursuant to the Nebraska Post Conviction Act. We affirm.

Defendant was sentenced by the District Court for Buffalo County on January 23, 1978, having been found guilty on January 5, 1978, of three counts of a four-count amended information, and guilty of the fourth count on January 23, 1978. The information charged him with separate counts of robbery, shooting with intent to kill, using a firearm in the commission of a felony, and being a habitual criminal. The sentences imposed by the court are to run consecutively — for robbery, a term of 3 to 5 years; for shooting with intent to kill, a term of 15 to 25 years; and for use of a firearm in the commission of a felony, a term of 3 to 5 years.

The charges arose out of a complaint filed by the State on July 26, 1977, alleging defendant's commission of the aforementioned crimes on July 25, 1977, along with a codefendant, Vernon Ellmers. On July 26, 1977, defendant first appeared in court on the charges, and bond was set at $100,000 with the 10 percent provision. On August 2, 1977, the Buffalo County Court appointed Mr. Kent A. Schroeder, Kearney, Nebraska, to represent the defendant in those criminal proceedings. Mr. Schroeder represented the defendant from that date forward through the sentencing hearing on January 23, 1978. In addi-

tion, Mr. Schroeder continued on as court-appointed counsel for the defendant in his appeal to this court. That appeal resulted in an affirmance of the trial court's judgment. *State v. Journey*, 201 Neb. 607, 271 N.W.2d 320 (1978). The facts surrounding the commission of the offenses for which defendant was convicted are found in the *Journey* case at 609-12.

Defendant testified at the post conviction hearing that he told Mr. Schroeder he was not involved in the crimes, and that on the evening of the alleged crimes, he had been at Gary Steinmark's residence in Kearney visiting with Mr. Steinmark in his backyard; that Mr. Ellmers had picked him up at Mr. Steinmark's residence late that evening, put his wheelchair in the back of a pickup; and that they then proceeded to ride around. The pickup in which Mr. Ellmers initially picked up the defendant was the same one in which they were both arrested some time later and which turned out to be the pickup belonging to Jack Muller, the victim of the crime. Defendant further testified that, although they did go to the vicinity where the shooting took place after Ellmers had picked him up on the evening of July 25, 1977, Mr. Ellmers turned the pickup around as they approached the gravel pit area and headed north, away from what he later found out to be the scene of the crime. Mr. Schroeder was informed by defendant, according to the defendant, that this would have been his testimony if he had been allowed to testify. Defendant stated he never told Schroeder that he was at the scene of the crime at the time of the shooting incident, and said that at all times he informed Schroeder of the alibi defense of being with Mr. Steinmark at the time the crimes occurred.

Defendant asked Mr. Schroeder "almost every time" he saw him about getting the bond reduced, but Schroeder failed to apply for a bond reduction, according to the defendant.

Following arrest, the defendant and his codefend-

ant, Mr. Ellmers, were both incarcerated in the county jail, but were separated. Prior to trial, Mr. Ellmers committed suicide and defendant was informed of some potential suicide notes left by Ellmers. Although defendant asked his counsel to check into the existence and contents of such alleged notes, he stated he was given no idea of their existence or nonexistence prior to trial. Mr. Schroeder claimed he was not made aware of any such notes before trial, and he could not recall whether defendant had mentioned them to him.

The primary defense that defendant conveyed to his counsel was that he was with friends the evening of July 25, 1977, the night the crimes occurred. The friends were Gary and Ginger Steinmark. Defendant claims he was in their yard at their residence that evening until later on when Mr. Ellmers picked him up. Defendant said he informed his counsel of Mr. Steinmark as an alibi witness shortly after he was appointed to represent the defendant. He said that he and Mr. Schroeder discussed using Mr. Steinmark as a defense witness several times, specifically with reference to his being able to furnish an alibi for the defendant. They discussed the pros and cons of Mr. Steinmark testifying, but the defendant "figured that Mr. Schroeder was the attorney, that he knew best." Mr. Steinmark was not called as a witness, nor was Ginger Steinmark. The defendant called only one witness, his family physician, Dr. S. O. Staley. The defendant said he did not know before the trial that Mr. Steinmark was not going to be called as a witness and was never made aware of that fact.

Both Gary and Ginger Steinmark testified at the evidentiary hearing. No one, according to Mr. Steinmark, had ever called or talked to him about his having seen the defendant at or about the time of the shooting incident, until an associate of defendant's counsel on the motion to vacate sought him out approximately a week before the evidentiary hearing

on December 31, 1979. Mr. Steinmark knew the defendant quite well, and during the month of July 1977 he had talked to the defendant approximately four different times in the yard of his (Steinmark's) home at Kearney. He recalled the day of the shooting, and when asked to recall as to whether one of those July visits may have been on the evening of July 25, 1977, he said, "I really don't know. I truthfully can't answer that because I don't know. I thought I did but my wife said it was the evening before. I don't know truthfully. I don't know myself. . . .Well, it's possible that him and Elmers [sic] could have been. It is possible, yes, but I'm not for sure."

Similarly, Ginger Steinmark had not been contacted by Mr. Schroeder or his associate at any time with reference to the evening of July 25, 1977. Her testimony was also vague in terms of her recollection of the events some 2½ years prior, although she recalled defendant coming to their home and visiting with Gary in the backyard on a number of occasions. Part of her testimony is as follows: "Q- Were there ever any occasions where before July 25th of '77, Mr. Vic Journey would come over and visit your husband and talk to him in the yard? A- I've seen him out there a couple times in the yard. Q- Were there any occasions where you would bring them out a beer and sandwiches? A- One time my husband came in and got sandwiches for them. Q- Do you recall whether or not that was the evening of the date of the shooting or can you recall? A- It was around there. I couldn't tell you if it was the day or day before. Q- You just can't remember? A- I can't. Q- But you do remember that it was around that time? A- It was close; it was the day before maybe. Q- Or maybe the day of? A- Yeah; I don't know."

Mr. Schroeder could not recall whether defendant had mentioned the names of Gary or Ginger Steinmark to him before trial as potential alibi witnesses, but stated that it was possible he may have.

Defendant waived a jury trial, and stated that he

did so because of advice of counsel that it would cost less for the county and that his counsel thought the judge would be more lenient with him. Another reason given by Mr. Schroeder, according to the defendant, was his past history of criminal background in the community. During conferences with Mr. Schroeder, the defendant said he was also persuaded to refrain from testifying on his own behalf.

During the evidentiary hearing, the State's attorney asked Mr. Schroeder whether the subject of defendant's own guilt or innocence was ever discussed with him, to which Mr. Schroeder responded in the affirmative. The county attorney then sought the specific conversation which Mr. Schroeder had with the defendant with reference to his guilt or innocence. Objection was made and overruled. The court then inquired of the defendant as to what his position was with regard to a waiver of his attorney-client privilege with Mr. Schroeder. Defendant responded that he was waiving the privilege as to any communication which may be relevant to the hearing. The district judge rejected the condition of the waiver and insisted that the privilege be either unconditionally waived or he would dismiss the petition.

Defendant claims that he was deprived of his constitutional right to effective counsel in his original trial. As his assignments of error, defendant contends that at the post conviction hearing the trial court erred in finding that the following did not constitute ineffective assistance of counsel: (1) Failure to contact and/or interview witnesses; (2) Failure to seek a reduction in defendant's bond; (3) Failure to investigate the existence and/or contents of a potential suicide note of Vernon Ellmers; (4) Waiver of a jury trial; and (5) Advice to defendant not to testify in his own behalf. Defendant also claims that the court erred in forcing the defendant at the evidentiary hearing to elect between a blanket waiver of his attorney-client

privilege or a summary dismissal of his motion for post conviction relief.

Nebraska employs a two-part test for determining whether an attorney has effectively counseled a criminal defendant. First, counsel must perform at least as well as one with ordinary criminal law skill and training in his or her region. Counsel must also conscientiously protect his client's interests. *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974); *State v. Lang*, 202 Neb. 9, 272 N.W.2d 775 (1978). A defendant challenging competency of counsel has the burden to establish it. *State v. Auger & Uitts*, 200 Neb. 53, 262 N.W.2d 187 (1978). In addition, defendant must show that he suffered prejudice in the defense of his case as a result of his attorney's actions or inactions. *State v. Mays*, 203 Neb. 487, 279 N.W.2d 146 (1979); *State v. Lang, supra; State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977).

The assignments of error will be discussed in the above order.

Does the record show that defendant's alibi witnesses, Gary and Ginger Steinmark, would have benefited his defense, and, if so, did his attorney know about them and ineffectively represent his client by failing to interview and call them?

Defendant could offer at his evidentiary hearing only his own uncorroborated testimony that he had informed his attorney before his trial that he was at the Steinmarks' the night of the shooting, for which he was convicted. His trial attorney testified that he could not recall mention of any such possible alibi.

At best, the District Court was faced with a swearing match, but a closer examination of all the testimony presented during the evidentiary hearing lends additional support to the testimony of defendant's trial attorney. As the District Court specifically found, defendant did take the stand during his original trial and testified that he could think of no other witnesses who might have been called in his behalf.

The Steinmarks were unable to recall whether the defendant had been with them at their residence, as he contends, a short time before his arrest. Further, if defendant had indeed been with the Steinmarks at the time of the shooting, it is most unusual that, once they had learned he had been arrested for a crime committed at a time when he was supposedly with them, they failed to voluntarily come forward in his behalf.

For the above reasons, the failure to interview or call the Steinmarks during the defendant's trial was not constitutionally ineffective legal counsel.

There is no evidence to demonstrate that the failure to procure a reduction in bond prejudiced defendant's case. Defendant failed to establish that he could have posted bond even if it had been reduced.

It is not contended that there is no situation where the failure of a defense attorney to seek a reduction in bond would not be ineffective legal representation. The case of *Kinney v. Lenon*, 425 F.2d 209 (9th Cir. 1970), cited by defendant, is such a case, but it is readily distinguishable from that at hand. In *Kinney*, the defendant was uniquely and solely able to discover witnesses essential for the investigation and preparation of his defense because, while not knowing them by name, he did know them by sight. This certainly is not the case in the matter before the court here. In fact, defendant himself, in support of his other arguments, contends that he revealed all the information he had about his case to his attorney.

Defendant says, in essence, that had he been released on bond, it is uncontrovertible that admissible evidence helpful to his cause would have resulted therefrom. Obviously, this court cannot presume such a result, for that is the very showing defendant is required to make to substantiate his claim of ineffective counsel, a showing which he clearly has failed to make.

Defendant testified that he learned of the possibility of the alleged suicide note or notes, informed his attorney of the same, and asked him to check into it. The testimony of his attorney is that, before his client's trial, he was not aware of any such suicide note from conversations with defendant or otherwise.

During the post conviction hearing, defendant successfully objected to the introduction of a document or paper produced by the State that he admits in his brief might have had some relevance to the codefendant's suicide, for the reason that no proper foundation had been laid for the introduction of same. Thus, the District Court lost, at defendant's choosing, an opportunity to discover additional evidence which might have established not only the existence of a suicide note but also possible prejudice to defendant's case during trial.

The District Court, therefore, had before it only conflicting testimony as to whether the existence of a suicide note could have been discovered during the course of a reasonably competent investigation by counsel, and no evidence that the failure to investigate the matter prejudiced defendant's case. Thus, the District Court had no choice but to find against defendant on this particular claim.

No Nebraska criminal cases have dealt directly with ineffective representation of counsel in connection with jury trial waiver. However, this court has rendered several decisions in cases involving waiver of trial itself, i.e., guilty pleas, where issues of inadequate counsel were raised.

In *State v. Ford*, 200 Neb. 779, 265 N.W.2d 456 (1978), this court adopted the general principle that requiring guilty pleas to be intelligently waived does not mean that all of defense counsel's advice must withstand retrospective examination on post conviction hearing. So long as counsel's advice was within the range of competence required for attorneys in criminal cases and does not induce defendant to plead

guilty by threats or promises, a defendant may not attack his guilty plea on appeal. *Ford, supra.* Both the *Ford* case and *State v. Grayer*, 191 Neb. 523, 215 N.W.2d 859 (1974), indicate that the evidence must show that the plea was involuntary or counsel's advice inadequate before the court will reverse.

In the present case, the same principles would seem to apply. Defendant's defense attorney testified about discussions with defendant relative to the waiver of a jury trial, recalling that he emphasized the advantages of having the judge serve as the factfinder in cases where the defenses are technical and complex, and where defendant has a serious past criminal record. Defendant recalls his attorney mentioning something to the effect that because they cost less, judges favor nonjury trials, but also admitted that his attorney discussed the problems of his criminal background relative to the question of a jury trial.

Mr. Schroeder did relate to defendant his understanding that some lawyers do feel judges favor nonjury trials for certain practical reasons, but also explained that he believed this theory to be an "old wives' tale."

In *Commonwealth v. Boyd*, 461 Pa. 17, 29-30, 334 A.2d 610, 616-17 (1975), the Pennsylvania court noted: "Because 'the decision to waive a jury trial is ultimately and solely the defendant's,' [citation omitted] a defendant must bear the responsibility for that decision. Counsel's advice to waive a jury trial can be the source of a valid claim of ineffective assistance of counsel only when 1) counsel interferes with his client's freedom to decide to waive a jury trial [citation omitted] or 2) appellant can point to specific advice of counsel so unreasonable as to vitiate the knowing and intelligent waiver of the right. Where an appellant merely claims, as in the present case, that his decision was a strategic error, and can point to no specific incidents of counsel impropriety, he must

bear the responsibility for that decision and cannot shift the blame to counsel."

The evidence in the case at bar does not support a finding of any specific, unreasonable advice relative to said waiver which would amount to ineffective assistance of counsel.

This court has held that defense counsel's advice not to testify, after discussing it with his client as counsel did with defendant in the instant case, was not ineffective counsel where defendant's prior criminal record, as in this case, could have been used against him. In such a situation, the advice was merely reasonable trial strategy. *State v. Fowler*, 201 Neb. 647, 271 N.W.2d 341 (1978). The fact that a calculated trial tactic or strategy fails to work out as planned will not establish that counsel was ineffective. *State v. Holtan*, 205 Neb. 314, 287 N.W.2d 671 (1980).

This court cannot presume that had defendant testified as to his alibi, with or without corroboration by the Steinmarks, his case would have been more believable.

Defendant himself admits that the compelling advice of his trial attorney, upon which he relied in deciding not to take the stand, was the harmful consequences of his past criminal record. It is obvious that defendant simply raises a question of trial tactics and seeks to relitigate his case. This he cannot do.

The trial judge demanded that defendant either waive his attorney-client privilege at the evidentiary hearing or suffer dismissal of his petition for post conviction relief. Defendant claims that Neb. Rev. Stat. § 27-503(4) (Reissue 1979) allows him to waive the privilege, with reservations. He wanted to waive it only for communications relevant to the issues raised in his motion for post conviction relief.

Section 27-503(4) provides: "There is no [attorney-client] privilege under this rule:

. . . .

"(c) As to a communication relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer . . . ." This does not address waiver; it defines the scope of the attorney-client privilege. Accepting defendant's premise, we can conclude that defendant had no privilege concerning communications relevant to breach of duty by defense counsel. Hence, there was no waiver problem concerning relevant communication because defendant could not be forced to waive a privilege which he did not have.

The underlying problem seems to be who determines what communications are relevant to the issue of inadequate representation. Making evidentiary rulings, after objections, are part of the judge's function. The record seems to show that this was actually what occurred. Both counsel and the court assumed there was a waiver problem even though the judge remarked that his concern was as to who would determine relevancy. Testimony concerning communication, objections on the basis of relevancy, and rulings as to relevancy followed. Defendant does not challenge any of those rulings. This assignment is therefore without merit.

No error in the proceedings having been demonstrated, the order of the District Court denying post conviction relief must be affirmed.

AFFIRMED.