**Walter W. ROLLING, Petitioner,**

v.

**Gary E. GRAMMER, Respondent.**

**No. CV 85–L–395.**

United States District Court,
D. Nebraska.

Jan. 26, 1987.

Vincent M. Powers, Lincoln, Neb., (Court-appointed), for petitioner.

Robert M. Spire, Atty. Gen. and Bernard L. Packett and Laura L. Freppel, Asst. Attys. Gen., Lincoln, Neb., for respondent.

MEMORANDUM

LAY, Circuit Judge, Sitting by special designation.

Walter E. Rolling seeks relief from the 20–year sentence he is serving in the Nebraska prison system. In essence, Rolling argues that subsequent imposition of a higher sentence than that originally imposed by the trial court violates his right to due process of law. His case has been reviewed by the Nebraska Supreme Court on four occasions. *See State v. Rolling,* 209 Neb. 243, 307 N.W.2d 123 (1981); *State v. Rolling,* 215 Neb. xxi (1983); *State v. Rolling,* 218 Neb. 51, 352 N.W.2d 175 (1984); *State v. Rolling,* 219 Neb. 800, 366 N.W.2d 441 (1985).[1]

**Procedural Background**

On April 29, 1980, Rolling was charged with five criminal counts. Following a trial, at which a jury found Rolling guilty, the state district court[2] sentenced him as follows: count I (misdemeanor theft), 161 days in jail; count II (felony theft), 1 year; count III (attempted robbery, a felony), 5 years; count IV (use of a firearm to commit a felony), 4–7 years; and count V (being a habitual criminal), 4–7 years. The trial court ordered the sentences for counts I, II, and III to be served concurrently, and the sentences for counts IV and V to be concurrent with each other but consecutive to the sentences on the first three counts. The cumulative sentence was 9–12 years. According to Nebraska "good time" provisions under Neb.Rev.Stat. § 83–1,107 (1981), Rolling was to be eligible for parole on January 11, 1984, and absolute discharge was to occur on September 11, 1986.

Rolling appealed his conviction (on sufficiency of the evidence) and sentence (as harsh and an abuse of discretion). The state objected in its brief to "plain error" in the sentence imposed. The Nebraska Supreme Court rejected Rolling's appeals. The court, however, did find plain error in the district court's failure to properly sentence Rolling under the habitual criminal provision, Neb.Rev.Stat. § 29–2221 (1979).[3] The supreme court remanded the case for proper sentencing. *Rolling I,* 209 Neb. at 245–46, 307 N.W.2d at 125.

On remand the trial court resentenced Rolling as follows: counts I, II, and III remained concurrent at 161 days, one year, and five years respectively; count IV was increased to 10–60 years, in compliance with the language of the Nebraska Habitual Criminal Act; count V was dropped as a separate offense. Rolling then faced a sentence of up to 65 years.

Rolling attempted to file a direct appeal from the first resentencing, but this challenge apparently was dropped after Rolling's court-appointed attorney withdrew from the case. *See State v. Rolling,* 212 Neb. xxii (1982).

On December 14, 1982, Rolling filed his first petition for post conviction relief under Neb.Rev.Stat. §§ 29–3001 to –3004 (1979), alleging that his increased sentence violated due process under *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The state district court denied this petition, and Rolling appealed to the state supreme court. The supreme court rejected the appeal without issuing a written opinion. *See Rolling II,* 215 Neb. xxi (1983).

Rolling again sought post conviction relief on September 12, 1983, reasserting his argument that the increased sentence violated due process under *Pearce.* Judge

1. For purposes of clarity, these appellate decisions will be referred to herein as *Rolling I, II, III,* and *IV.*

2. The Honorable Bryce Bartu, District Court Judge for York County, Nebraska.

3. Section 29–2221 provides:

> Whoever has been twice convicted of crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and once at least in any other state, or by the United States, for terms of not less than one year each, shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal, and shall be punished by imprisonment in the Nebraska Penal and Correctional Complex for a term of not less than ten nor more than sixty years; *Provided,* that no greater punishment is otherwise provided by statute, in which case the law creating the greater punishment shall govern.

Bartu again denied the motion, and again Rolling appealed. This time the Nebraska Supreme Court found that Rolling's sentence still failed to comply with § 29–2221, so the court vacated the sentence and remanded the case with explicit directions for proper sentence. *See Rolling III,* 218 Neb. 51, 57, 352 N.W.2d 175, 179 (1984).

Pursuant to those directions, Judge Bartu resentenced Rolling for the second time on August 27, 1984. The sentences on counts II and III were increased to ten years each, to be served concurrently, and the new sentence of ten years on count IV was to be served consecutive to the sentences on counts I, II, and III. The net effect was that Rolling received a "flat" 20-year sentence, which he is currently serving. His latest discharge date is September 11, 1990.[4]

Rolling filed a third petition for post conviction relief, again Judge Bartu denied the petition, and again Rolling appealed to the Nebraska Supreme Court. On this appeal Rolling sought relief under *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963), as well as under *Pearce.* The supreme court rejected all of Rolling's claims, declaring "that there must be an end to the litigation of a particular case." *See Rolling IV,* 219 Neb. 800, 801, 366 N.W.2d 441, 442 (1985).

The present petition for a writ of habeas corpus was filed pursuant to 28 U.S.C. § 2254 (1982) on July 2, 1985.

**The Merits** [5]

**1. The claim under <u>Pearce</u>**

█ Rolling has repeatedly argued to the Nebraska Supreme Court that the increase of his sentence after his (unsuccessful) appeal violates due process [6] as interpreted in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This argument revolves around the allegation that Rolling received a higher sentence *because* he sought to appeal his conviction and sentence, a right guaranteed him by the Constitutions of Nebraska and the United States. Under the theory of

4. Rolling apparently will never be eligible for parole, as he is scheduled for absolute discharge before parole could be awarded.

5. The parties have stipulated that Rolling has exhausted his remedies in the Nebraska courts, as required under 28 U.S.C. § 2254(b). The exhaustion requirement can be waived by the state. *Purnell v. Missouri Dept. of Corrections,* 753 F.2d 703, 710 (8th Cir.1985) (noting that " 'the extraordinary course' of rejection [of the waiver] should be followed only when avoidance of injustice or the public interest would manifestly be served") (*quoting McGee v. Estelle,* 722 F.2d 1206, 1214 (5th Cir.1984)). Even if the exhaustion requirement were not satisfied, given the extraordinary procedural history of this case, this court believes that the waiver should be accepted. As the Eighth Circuit said in *Purnell,* "the ultimate disposition of this case will be advanced by consideration of [the petitioner's] claims on their merits." 753 F.2d at 710.

6. In cases involving resentencing, the constitutional concerns about double jeopardy and equal protection are closely intertwined with the due process inquiry. The *Pearce* case was ultimately decided on due process grounds, *see* 395 U.S. at 723–26, 89 S.Ct. at 2079–81, after double jeopardy and equal protection theories were expressly rejected, *see id.* at 721, 723, 89 S.Ct. at 2078, 2079, 2079 (double jeopardy), 723 (equal protection).

The most recent case in which the United States Supreme Court comprehensively analyzed the double jeopardy concerns in the resentencing context was *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In *DiFrancesco* the Court held that a government appeal of an imposed sentence under 18 U.S.C. § 3576 did not violate the double jeopardy clause. The Court ruled that that type of government appeal in a criminal case is constitutional because sentences (as opposed to verdicts of acquittal) are not final. The Court noted that the "basic design" of the double jeopardy clause is as a "bar against repeated attempts to convict," not to prohibit review of a sentence. *Id.* at 136, 101 S.Ct. at 437.

For a recent application of the *DiFrancesco* rule, see *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (allowing resentencing after appeal). For a view limiting *DiFrancesco* to situations in which Congress has specifically permitted the government to appeal, see *Ralston v. Robinson,* 454 U.S. 201, 224 n. 3, 102 S.Ct. 233, 247 n. 3, 70 L.Ed.2d 345 (1981) (Stevens, J., dissenting).

The Ninth Circuit recently held that *DiFrancesco* does not allow resentencing after the defendant has completed serving the original sentence. *United States v. Arrellano-Rios,* 799 F.2d 520, 523–24 (9th Cir.1986). The Eleventh Circuit, meanwhile, has disallowed resentencing once the defendant has *begun serving* the original sentence. *United States v. Jones,* 722 F.2d 632, 636–38 (11th Cir.1983).

*Pearce*, any retaliation for exercising a procedural right thus denies due process. The *Pearce* Court required that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081.

At the outset, it is important to recognize the differences between the present case and *Pearce.* In *Pearce* the defendant received a stiffer sentence after a *successful* appeal had forced retrial. *Id.* at 713, 89 S.Ct. at 2074. The Supreme Court held that an increase in that context was presumptively "vindictive" on the part of the sentencing judge, whose judgment had been reversed on the first appeal. *See id.* at 726, 89 S.Ct. at 2081. The present case is different in that Rolling was *unsuccessful* in his direct appeal after conviction and sentencing. Rolling's resentencings took place only after findings by the Nebraska Supreme Court in *Rolling I* and *Rolling III* that the trial court had imposed illegal sentences due to the trial court's incorrect application of the habitual criminal statute. The *Pearce* presumption of vindictiveness could hardly apply under these circumstances.

The literal logic of Rolling's appeal—that he would be free had he not appealed his conviction—compels this court to analyze it closely under the cases decided since *Pearce.*[7]

The most recent Supreme Court pronouncement on the due process concerns of *Pearce* came last term in *Texas v. McCullough,* 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). In *McCullough* the Court upheld a sentence that was increased from 20 years to 50 years after a successful defense motion for a new trial. The majority wrote that "vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial." 106 S.Ct. at 979. The Court found that the prophylactic *Pearce* rule did not apply because "there was no realistic motive for vindictive sentencing," *id.* at 980, and because "different sentencers assessed the varying sentences that McCullough received," *id.* Moreover, the Court found that even if the presumption were to apply, the trial judge's findings overcame the presumption. *Id.* at 980–82.

*McCullough* demonstrates that the basic concerns underlying the *Pearce* rule are why the sentence was increased and the need to guard against improper motivation in resentencing. The 150% increase in McCullough's sentence was upheld by the Court when the resentencing entity[8] based its decision on new evidence not presented at the original trial, and when the retrial had been granted by the trial court itself because of prosecutorial misconduct. *Id.* at 979. The Court was not swayed by the fact that had McCullough not moved for a new trial—which he had a due process right to do—his 20-year sentence would have remained intact.[9]

7. As Justice Marshall wrote recently in *Texas v. McCullough,* 475 U.S. 134, 106 S.Ct. 976, 988, 89 L.Ed.2d 104 (1986) (Marshall, J., dissenting): "A lot has happened since the final day of the October 1968 term, the day *North Carolina v. Pearce* was handed down. But nothing has happened since then that casts any doubt on the need for the guarantee of fairness that this Court held out to defendants in *Pearce.*"

8. McCullough originally was sentenced by a jury; after his successful appeal and adverse publicity surrounding the case, he elected to have his second sentence set by the trial court. *See* 106 S.Ct. at 978. The Supreme Court viewed this election as significant evidence that the trial court was not regarded as vindictive by the defendant, a party certainly atuned to such an attitude.

9. The Court wrote:

> To be sure, a defendant may be more reluctant to appeal if there is a risk that new, probative evidence supporting a longer sentence may be revealed on retrial. But this Court has never recognized this "chilling effect" as sufficient reason to create a constitutional prohibition against considering relevant information in assessing sentences. We explained in *Chaffin v. Stynchcombe,* 412 U.S. [17, 29, 93 S.Ct. 1977, 1984, 36 L.Ed.2d 714 (1973) ], "the Court [in *Pearce* ] intimated no doubt about the constitutional validity of higher sentences in the absence of vindictive-

Walter Rolling's case is strikingly similar to the defendant's in *McCullough.* The justification given for the higher sentence was that Nebraska law required an enhancement for habitual offenders. In effect the ultimate "resentencer" was the Nebraska Supreme Court, which mandated the flat 20-year term. Twice the supreme court vacated improper sentences, the first because it was too low and the second because it was too high. There is no hint of vindictiveness.[10] *Cf. Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (allowing higher sentence by jury on retrial after successful appeal does not offend due process as long as jury is unaware of first sentence and no showing of vindictiveness); *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (finding no vindictiveness under *Pearce* when trial court on de novo appeal from inferior tribunal imposed a higher fine than lower court had; Supreme Court noted difference in sentencers and lack of motive to be vindictive or evidence of vindictiveness); *Holloway v. Lockhart,* 754 F.2d 252, 254 (8th Cir.) (affirming denial of habeas petition when no showing of vindictiveness; different prosecutor, judge, and jury on retrial; second judge had no knowledge of first sentence), *cert. denied,* 474 U.S. 836, 106 S.Ct. 111, 88 L.Ed.2d 90 (1985); *Blankenship v. Parratt,* 554 F.2d 850, 852 (8th Cir.1977) (enhancement of illegal sentence approved under *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947)). The court was simply attempting to assess the punishments set forth by Nebraska statute for the crimes Rolling committed. As the United States Supreme Court said in *Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947) (citations omitted):

> This Court has rejected the "doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence." The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court "only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender."

*See also DiFrancesco,* 449 U.S. at 134–35, 101 S.Ct. at 436; *cf. United States v. Edmonson,* 792 F.2d 1492, 1496 (9th Cir.1986) ("no double jeopardy prohibition against correcting an illegal sentence even if such correction increases the punishment"); *United States v. Crawford,* 769 F.2d 253, 258 (5th Cir.1985) (same), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); *United States v. Paul,* 783 F.2d 84, 87 (7th Cir.1986) (same); *United States v. Jefferson,* 714 F.2d 689, 707 (7th Cir.1983) (same).

This case is distinguishable from the Eighth Circuit case of *United States v. Gilliss,* 645 F.2d 1269 (8th Cir.1981), a pre-*McCullough* decision in which the court vacated a higher resentence on *Pearce* grounds. *See id.* at 1284. In *Gilliss* the court found that the trial judge had failed to meet the *Pearce* requirement of articulating " 'identifiable conduct on the part of the defendant occurring after the time of the original sentencing.' " *Id.* (quoting *Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081).

> ness despite whatever incidental deterrent effect they might have on the right to appeal." We see no reason to depart from this conclusion.

106 S.Ct. at 981–82.

10. Rolling accuses Justice Krivosha of holding "an obsession for [his] case for the reason that he wanted to make an example out of it in order to set a new standard of law for sentencing defendants under the Nebraska Habitual Act [sic]." *See* Pet.Rep.Br. at 2 (pro se). As "evidence" of this Rolling points to a statement, *see* Pet.Br. at 6, in *Rolling III* that Rolling should have "let a sleeping dog lie." 218 Neb. at 51, 352 N.W.2d at 177. While this statement may be regarded as unnecessary or even unwise ventilation of judicial frustration, it is not proof of vindictiveness. Rolling himself uses the phrase in acknowledging that his plight was caused by his own appeal. *See* Pet.Rep.Br. at 12 (pro se). Rolling also points to Justice Krivosha's failure to clearly apply § 29–2221 in *Rolling I, State v. Journey,* 201 Neb. 607, 271 N.W.2d 320 (1978), or *State v. Smith,* 209 Neb. 86, 306 N.W.2d 181 (1981), making *Rolling III* the first definitive case. *See* Pet.Br. at 6 (pro se).

In the present case the sentencing judge (and the Nebraska Supreme Court) did articulate legitimate reasons for the enhanced sentence, *i.e.* the requirements of Nebraska statutory criminal law. Moreover, the crucial distinction in context between the present case and *Pearce* renders *Gilliss* (a retrial case like *Pearce*) inapplicable.

Similarly, this case is unlike *United States v. Durbin*, 542 F.2d 486 (8th Cir. 1976), in which the Eighth Circuit applied *Pearce* to vacate a harsher sentence after an appeal but no new trial. Durbin challenged his sentence as excessive, and, to his chagrin, ended up with an increased sentence. The Eighth Circuit applied *Pearce* but expressly distinguished the illegal sentence situation of *Bozza. See id.* at 488–89 (acknowledging ability of court to correct errant sentence).

This court concludes that the due process challenge under *Pearce* must fail, particularly in light of the recent decision in *McCullough.*

### 2. The Bouie Issues

Rolling bases two arguments on the doctrine of *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), which holds that the due process clause is violated when a state judiciary applies its laws retroactively in a way unforeseeable by a criminal defendant. *Id.* at 354, 84 S.Ct. at 1703. The Court wrote:

> The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect.

*Id.* (citations omitted). The Court ultimately overturned the trespassing conviction of two blacks in South Carolina who had been arrested after they refused to leave a restaurant when asked to do so. The Court held that the South Carolina Supreme Court's interpretation of state trespassing laws to include refusal to leave after permitted entry did not provide "fair warning" to the defendants, because the interpretation was "clearly at variance with the statutory language" and had "not the slightest support in prior South Carolina decisions." *Id.* at 356, 84 S.Ct. at 1704.

Rolling's first point under *Bouie* is that prior to his first direct appeal (*Rolling I*), "no Nebraska case had ever *required* a minimum 10 year sentence for *each* conviction under the Nebraska Habitual Criminal Act." Pet.Rep.Br. at 7 (pro se) (emphasis in original). Rolling's second point is that prior to *Rolling I* "no Nebraska defendant was ever disadvantaged as a result of the 'plain error' doctrine." *Id.* at 8. In combination, Rolling's arguments state that the sentence increase after his unsuccessful appeal was so unexpected and unforeseeable that its imposition deprives him of due process of law.

The habitual criminal statute applied by the court was Neb.Rev.Stat. § 29–2221, which provided that a person twice convicted for a felony "shall be punished by imprisonment * * * for a term of not less than ten nor more than sixty years" upon conviction of a third felony. The respondent argues that this provision directly mandated the sentence ultimately imposed. According to the state's interpretation, § 29–2221 required a 10–year minimum sentence on each felony count (counts II, III, and IV), with the sentence on the firearm count (count IV) required to be consecutive under Neb.Rev.Stat. § 28–1205(3) (1979). Adding the concurrent 10–year terms for counts II and III to the 10–year term on count IV, the state calculates Rolling's correct sentence at a 20–year minimum. The trial court, acting on the mandate of *Rolling III,* fixed a flat 20–year term. The state argues that the statute made this sentence plainly foreseeable.[11]

11. Rolling points out that he was not the only party that did not recognize this conclusion. Judge Barta also interpreted the habitual criminal act differently—twice. In fact, it was not until the *Rolling III* mandate that the trial court

To counter this apparent statutory logic, Rolling raises language in *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974), for the proposition that application of § 29-2221 to his case was discretionary rather than mandatory. The court in *Harig* wrote:

> We hold that where a defendant is simultaneously convicted of more than one felony charge on the same information and the Habitual Criminal Act is applicable, such defendant *may* be sentenced separately for each underlying conviction, each sentence being enhanced under the Habitual Criminal Act.

*Id.* at 61, 218 N.W.2d at 892 (emphasis added).

The petitioner's reliance on *Harig* for the proposition that § 29-2221 is discretionary does injustice both to *Harig* and the many other cases applying the Nebraska habital criminal provisions. First, the quoted passage from *Harig* was written in the context of the court's *affirmance* of three concurrent sentences of 15 to 20 years under § 29-2221. The court found that the sentencing judge had correctly applied § 29-2221 by fixing a sentence of 15 to 20 years for each of three felony convictions, then ordering them to be served concurrently. (That, in effect, is similar to what happened to Rolling on counts II and III. The consecutive nature of count IV stems from the special requirement of § 28-1205(3)). In light of the court's affirmance of Harig's sentence, its use of the word "may" indicates only that the separate enhancements were proper under the statute. The court did not address whether a failure to enhance each felony sentence—as Judge Bartu did in Rolling's case—would be permissible under § 29-2221.

In addition to misconstruing the scope of *Harig*, Rolling ignores the dictates of Nebraska case law under § 29-2221. The Nebraska Supreme Court noted repeatedly, prior to Rolling's actions, conviction, or appeal, that the habitual criminal provision *mandates* a sentence of at least ten years upon conviction of a felony. *See State v. Stephenson*, 199 Neb. 362, 258 N.W.2d 824 (1977); *State v. King*, 196 Neb. 821, 246 N.W.2d 477 (1976); *State v. Gaston*, 191 Neb. 121, 214 N.W.2d 376 (1974) (vacating sentence of 1-2 years as too low). While none of these cases deals specifically with a fact situation identical to the present case, it seems apparent that the clear thrust of Nebraska law requires the enhancement of each felony conviction. That is what the Nebraska Supreme Court intimated in *Rolling I* and finally made explicit in *Rolling III.*

■ While this court must agree with the petitioner that prior to his case no reported decision on identical facts had resulted in a sentence similar to the one he ultimately received, his first *Bouie* argument still fails. Given the clarity of § 29-2221 and the forceful applications of it before Rolling was arrested in 1980, he had "fair warning" of the penalty for his actions. This is not a case in which the Nebraska Supreme Court has interpreted a clear, *narrow* provision broadly to make illegal conduct previously regarded as innocent.[12] *See Bouie*, 378 U.S. at 354-63, 84 S.Ct. at 1703-07.

We conclude that the first due process claim under *Bouie* must fail.

Rolling's second *Bouie* argument involves the court's interpretation of the plain error doctrine of Neb.Rev.Stat. § 25-1919 (1979):

> The Supreme Court shall by general rule provide for the filing of briefs in all causes appealed to said court. The brief of appellant shall set out particularly each error asserted and intended to be urged for the reversal, vacation or modification of the judgment, decree or final order alleged to be erroneous; but no petition in error or other assignment of errors shall be required beyond or in

adopted the supreme court's application of § 29-2221.

12. Moreover, it may be important to note that Rolling never has challenged his convictions, as the *Bouie* defendants did. Instead, he challenges his sentence. We have assumed that *Bouie* applies in this analogous context, an assumption we must scrutinize further in the context of Rolling's second *Bouie* claim, as discussed in footnote 14, *infra.*

addition to the foregoing requirement. *The Supreme Court may, however, at its option, consider a plain error not specified in appellant's brief.* (Emphasis added). Rolling argues that except in his case, the plain error rule has never been used *against* a criminal appellant. He concludes that the court in *Rolling I* had no precedent for so interpreting § 25–1919, which is a restatement of Rule 8a2(3) of the Revised Rules of the Supreme Court of Nebraska (1977).

The respondent argues again that the literal language of the statute itself gave Rolling fair warning that the supreme court could correct plain errors that had favored him below. In addition, the state points to *State v. Gaston,* 191 Neb. 121, 214 N.W.2d 376 (1974), and *State v. Journey,* 201 Neb. 607, 271 N.W.2d 320 (1978), as cases foreshadowing the result in *Rolling I* and *Rolling III.* In *Gaston* the Nebraska Supreme Court wrote that any illegal sentence can be vacated on appeal, even when the imposed sentence was illegal because it was shorter than the minimum imposed by statute. 191 Neb. at 123, 214 N.W.2d at 377 (citing *Hickman v. Fenton,* 120 Neb. 66, 231 N.W. 510 (1930)). In *Journey* the court indicated in dicta that had either party addressed the defendant's sentence on appeal, the court would have applied the habitual criminal provision to enhance an impermissibly low sentence.[13] *See* 271 N.W.2d at 325. Rolling, like the defendant in *Gaston* and unlike the defendant in *Journey,* did challenge his sentence on appeal. Also, as in *Gaston,* the state did raise the plain error issue. The state argues now that Rolling should have known when he filed his appeal that the supreme court could adjust his sentence either up or down if its examination revealed the sentence to be illegal.

Again, it may be true that the Nebraska Supreme Court has never expressly used the plain error doctrine of § 25–1919 to adversely affect a criminal defendant on appeal. But as was true in regard to the earlier *Bouie* issue, the methodology in *Rolling I* still cannot come as an unforeseeable, retroactive application of the law to petitioner Rolling. One needs go no further than *Gaston* to find a Nebraska case in which a habitual criminal's sentence was vacated as too low and remanded for resentencing. *See also State v. Davis,* 200 Neb. 557, 264 N.W.2d 198 (1978) (defendant appealed and got habitual criminal sentence thrown out; on remand court imposed stiffer sentence—consecutive rather than concurrent; Nebraska Supreme Court affirmed). The discussion of the *Pearce* issue above shows that an appellate court clearly can correct an illegal sentence. Rolling may not have known this when he filed his appeal, but his surprise and dismay do not equal the level of unforeseeability found unconstitutional in *Bouie.* Due process does not preclude the Nebraska Supreme Court from correcting Rolling's errant sentence under the *Bouie* doctrine.[14]

For the reasons stated above, the writ is denied.

---

13. The court declined its opportunity to correct the apparently illegal sentence in *Journey* because *neither* party discussed the sentence in its brief, although the defendant originally challenged the sentence as excessive. *See* 271 N.W.2d at 325; *cf. State v. Smith,* 209 Neb. 86, 306 N.W.2d 181 (1981) (court ignores unenhanced sentence even though defendant was habitual offender).

14. Rolling's strained analogy to *Bouie,* as discussed in footnote 12, *supra,* is even more tenuous in his second challenge under that case. Section 25–1919 is a *procedural* provision, one not speaking at all on questions of criminal conduct. Because this court has rejected Rolling's argument even applying *Bouie's* standards, analysis of the issue of whether that case can serve as precedent is unnecessary.